ELLA KIMBROUGH, Plaintiff-Appellant, *v.* THOMAS J. SULLIVAN, Defendant —(LEVI ALEXANDER, Defendant-Appellee.)

(No. 53956; ▮▮▮▮▮▮▮

First District—January 8, 1971.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

314

Arthur S. Gomberg, of Chicago, (John H. Greenburg, of counsel,) for appellant.

Knouff & Ley, of Chicago, (Anthony J. Pauletto, of counsel,) for appellee.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

This is an appeal from an order of the Circuit Court under Section 72 of the Civil Practice Act (Ill. Rev. Stat. 1967, ch. 110, par. 72) vacating a default judgment which had been entered against defendant Alexander and granting him leave to plead.

The facts are set forth in Alexander's petition to vacate and supporting affidavit and in plaintiff's answer to that petition. On August 16, 1963, plaintiff filed suit against Thomas Sullivan for personal injuries sustained when she allegedly fell on property of which Sullivan was the owner and contract seller. Becoming convinced that Sullivan was not the proper defendant, the plaintiff dismissed him as a defendant on September 9, 1963, and filed an amended complaint against Alexander who was in possession of the premises as the contract buyer from Sullivan. When Alexander received the amended complaint and summons on October 4, 1963, he took them to Sullivan who was the named insured under a liability insurance policy which had been purchased with funds sup-

plied by Alexander. Alexander, who believed Sullivan to be a licensed attorney, was told by Sullivan that the matter would be taken care of.

On December 21, 1963, Alexander received notice from plaintiff that a motion for a default would be presented to the court on January 8, 1964, at 10:00 A.M. In Alexander's own words, he "appeared at said time and after no one showed up from the Plaintiff, I was told to go home by a man sitting along side of the Judge." When he returned home, he called Sullivan who again informed him that everything was taken care of and not to worry. In her answer to the petition, plaintiff states that "a member of the office of [her] attorney appeared at the appointed time in court and defendant petitioner was not present." No order was entered, however.

On October 2, 1964, plaintiff did obtain an order of default against Alexander, after notice of motion served by mail on the certification of plaintiff's attorney. Alexander denies ever having received this notice.

Thereafter, plaintiff made no effort to procure a judgment until July 19, 1968, almost four years after the entry of the default order, at which time the case came up on the trial call and a default judgment in the amount of $15,000 was entered against Alexander. Alexander had no notice of the judgment until the last week in December (more than five months after its entry), when he, his bank, and his employer were notified of garnishment and wage deduction proceedings. He then employed counsel, and on January 14, 1969, the wage and garnishment proceedings were stayed. Alexander's petition to vacate the judgment, together with his supporting affidavit, was filed on January 20, 1969. After hearing arguments of counsel and considering supporting briefs, the trial court granted the petition and the judgment was vacated. It is from this order that plaintiff appeals.

A petition filed under Section 72 of the Civil Practice Act invokes the court's equitable powers, as justice and fairness require, to prevent the enforcement of a default judgment. (*Ellman v. DeRuiter*, 412 Ill. 285, 292; *Elfman v. Evanston Bus Co.*, 27 Ill.2d 609, 613.) The petition is addressed to the sound discretion of the trial court and may be reversed only when the reviewing court is satisfied that the trial court abused its discretion. *Goldman v. Checker Taxi Co., Inc.*, 84 Ill.App.2d 318, 320; *Calvo v. Willson*, 59 Ill.App.2d 399, 404.

■■ The party seeking to vacate a default judgment through proceedings under Section 72 must show that he has a meritorious defense and that he has a "reasonable excuse" for not having presented that defense in time to avoid entry of the default. (*Johnson-Olson Floor Coverings v. Branthaver*, 94 Ill.App.2d 394, 397.) The first element, that the defendant have a meritorious defense, is not questioned in this case, so the sole

question before us is whether Alexander's reliance on Sullivan to handle this suit constitutes a reasonable excuse for not having presented his defense in apt time.

The situation in this case may be unique. Sullivan was the contract seller of the property where the tort was alleged to have occurred, was originally a party defendant, was believed to have been an attorney, and was the person named as the insured on the liability policy purchased with Alexander's funds. On two occasions, Alexander talked to Sullivan concerning the court papers he received and both times was assured that the matter was being taken care of. This is not a case where the defendant did nothing more than mail the summons to his insurance broker without further inquiry to ascertain that the mail had been delivered and that a defense was being prepared. (See *Wagner v. Sulka,* 336 Ill.App. 101, 105-106; *Bonn v. Arth,* 331 Ill.App. 321, 330.) In view of the relationship between Sullivan and Alexander, the latter's conduct appears to us to have been eminently reasonable, and we cannot say that his reliance on Sullivan was so unreasonable as to constitute inexcusable negligence. This conclusion is in line with the numerous cases in which reliance on a person reasonably believed to be handling the defense has been held to be excusable. *E.g., Gary Acceptance Corp. v. Napilillo,* 86 Ill.App.2d 257, 263 (defendants' attorney told them to ignore summons); *Spencer v. American United Cab Ass'n,* 59 Ill.App.2d 165, 167 (defendants sent court papers to the state Department of Insurance because their insurer was being liquidated); *Dann v. Gumbiner,* 29 Ill.App.2d 374, 382 (defendant was twice told by his insurance broker that the suit was being taken care of); *Boyle v. Veterans Hauling Line,* 29 Ill.App.2d 235, 243-244 (defendant relied on his insurance broker); *Elfman v. Evanston Bus Co., supra,* at pages 611-612 (defendant relied on its attorney).

Moreover, Alexander did more than simply rely on Sullivan's assurances. He went to court in response to the notice of motion for default to be presented on January 8, 1964, and when no one appeared on behalf of plaintiff, he was told by a clerk or bailiff that he could go home. While the plaintiff says that her attorney was present in court on that date and defendant was not, it is entirely possible that both parties' statements could be true, as the case could have been called more than once. On the matter of credibility, however, it seems highly significant to us that no order of default was entered on that date. Absence of the defendant would be consistent with default, and if plaintiff's attorney had been there, the order would probably have been entered.

In *Jansma Transport, Inc. v. Torino Baking Co.,* 27 Ill.App.2d 347, 355, the court said:

"In arriving at our conclusions we have borne in mind the need for

preserving the stability of judgments. On the other hand, the great increase in litigation in this country has placed such a burden on bailiffs and sheriffs that mistakes are bound to occur. It has also increased the number of defaults due to errors on the part of law clerks or lawyers. This has been evident in the large number of default cases which have come to us and to other courts of late."

Since the default was not entered on January 8, 1964, but on October 2, 1964, after alleged service of another notice, the statements said to have been made to Alexander by some court personnel telling him to go home, have a strong bearing, not so much on his reliance upon the clerk or bailiff, as on the question of the reasonableness of his reliance on Sullivan's statements that everything was being taken care of.

The record shows certification by plaintiff's attorney of mailing notice for the motion of default on October 2, 1964, but defendant denies having received it. That certification, however, is not in conformity with the requirements for mailed notice under the applicable section of Circuit Court Rule 3.1 then in effect.* The certification is defective in that it does not set out the place of mailing or the fact that proper postage was prepaid. In view of the possibilities for loss in the mails, we do not think that a requirement that the party relying on mailed notice conform his proof to the Rule places too great a burden on that party. (See *Iczek v. Iczek*, 42 Ill.App.2d 241, 250-251.) While we do not consider this point sufficient in itself to control our decision, we do, nevertheless, believe that it may be viewed as one of the factors in the case.

Another factor to be taken into consideration in a Section 72 petition is that the plaintiff delayed an attempt to collect the judgment (which would thereby notify defendant of its entry) until more than 30 days after the default judgment was entered. In the instant case, the plaintiff waited more than five months. As has been repeatedly stated, this tactic, designed to foreclose the making of a motion to vacate within 30 days, is offensive to a court of conscience and casts a cloud on the entire proceeding. *Elfman v. Evanston Bus Co., supra,* 614; *Ellman v. DeRuiter, supra,* 293; *Goebel v. Benefit Trust Life Ins. Co.,* 88 Ill.App.2d 19, 26.

■■ Furthermore, plaintiff allowed almost four years to elapse between the order of default and the entry of judgment and cannot now claim to

---

\* Ill. Rev. Stat. 1963, ch. 110, par. 303.1(b) (iii) provides:

(b) *Manner of proof*—Service is proved:

    (iii) in case of service by mail, by certificate of the attorney effecting the service or by affidavit of the person depositing the paper in the mail, stating the time and place of mailing, the complete address which appears on the envelope, and the fact that proper postage was prepaid.

be prejudiced by further delay which may be occasioned by vacating her default judgment and permitting defendant to assert his defense at this time. ■■ We find that the Circuit Court did not abuse its discretion in vacating the default judgment and the order is therefore affirmed.

Order affirmed.

STAMOS, P. J., and DRUCKER, J., concur.